FRANKLIN SOCIETY FOR HOME BUILDING AND SAVINGS, respondent,

*v.*

JOHN T. THORNTON et al., appellants.

[Submitted December 6th, 1915. Decided March 6th, 1916.]

1. A building and loan association agreed to convey land and subsequently agreed to loan the purchaser money to aid in erecting a dwelling thereon, to be advanced as the building progressed and secured by a mortgage subject to no encumbrance except such as might be waived by the lender. The borrower proceeded with the building but did not comply with the agreement, and secured no deed and executed no mortgage until the building had advanced far enough to entitle him upon compliance with the agreement to receive the first advance; thereupon a deed and mortgage were executed simultaneously; the deed was delivered and the unpaid balance of the purchase price retained by the vendor, and the balance of the amount to be advanced on the mortgage was paid to the vendee.—*Held*, that to the extent of the unpaid purchase price the mortgage was entitled to priority as a purchase-money mortgage. *New Jersey Building Loan and Investment Co.* v. *Bachelor, 54 N. J. Eq. 600*, approved.

2. An equitable estate is not subject to a mechanics' lien. *Dalrymple* v. *Ramsey, 45 N. J. Eq. 494*, approved.

3. Under section 14 of the Mechanics' Lien act, "advance money mortgages" recorded prior to the commencement of a building, are prior to mechanics' liens to the extent that money has actually been advanced thereon.

---

On appeal from a decree of the court of chancery advised by Vice-Chancellor Stevenson, whose opinion is reported *ante p. 37*.

Forclosure of a mortgage. On May 9th, 1911, complainant agreed to convey to Thornton a lot for $1,000, $5 in cash at the signing of the agreement, and $995 on the delivery of the deed on July 1st, 1911. On May 23d, 1911, the complainant agreed to loan Thornton $4,600 to aid in the erection of a dwelling on the lot which he agreed to complete, ready for occupancy, on September 1st, 1911. Upon his proceeding with the erection of the building, and observing the terms of the agreement, the complainant was to advance the $4,600 in three payments. The loan was to be secured by mortgage which was to be a valid lien for all sums advanced, subject to no encumbrance, except such as might be waived by the lender. Thornton proceeded at once, in May or June, to erect the house. No deed was delivered or money paid until October 6th, 1911. On that day the deed was delivered, the mortgage executed, and the first installment of $1,533 paid by two checks to Thornton's order, one for $995, and one for $538. The check for $995 was immediately endorsed back to the complainant in settlement of the balance due for the purchase price of the land. The check for $538 went into Thornton's bank account and was mingled with other funds. Payments were made from the account for work done or materials furnished for several buildings then in course of construction, including the one covered by complainant's mortgage. The $538 was not traced with any certainty to the payments for the last-named building. Subsequently, long after the mortgage was recorded, lien claims were filed by the appellants. The vice-chancellor advised a decree giving priority to the mortgage. The property was sold and by agreement the purchase price is held in the court of chancery subject to the result of the present appeals. It is less than the amount due for moneys actually advanced on the mortgage.

*Messrs. Pendergast & Neumann,* for the complainant.

*Mr. Jacob Willard De Yoe* and *Mr. Edgar A. De Yoe,* for the appellant Myers.

*Mr. Peter W. Stagg,* for the appellant Valle.

The opinion of the court was delivered by

SWAYZE, J.

The only question raised by the appeals is that of priority between the mortgage and the lien claims. We think the mortgage, to the extent of $995, is entitled to the priority of a purchase-money mortgage. Disregarding mere form, as we ought (*Wallace* v. *Silsby, 42 N. J. Law 1*), it is clear that the only way in which the complainant can receive that part of the purchase price of the land is through the mortgage. If we leave out of consideration the passing and repassing of the check, which was a mere ceremony advantageous only as preserving a written record or as a voucher, the complainant delivered the deed and received the mortgage therefor. It was chargeable with the obligation to advance the $4,600 only when Thornton could make the mortgage, as the agreement required, a valid lien, subject to no encumbrance; unless the mortgage secured the purchase price the complainant would retain a vendor's lien as a prior encumbrance until actual payment thereof. As Chief-Justice Beasley said, in *Wallace* v. *Silsby,* we must look at the intent of the parties and the real nature of the transaction.

The parties meant that the land should be paid for. If not paid for by the mortgage, it has not been paid for at all, and the complainant would still have its vendor's lien. If paid for by the mortgage, the mortgage is *pro tanto* a purchase-money mortgage. That is so even if the check be regarded as in fact cash advanced on the mortgage and applied to the satisfaction of the purchase price. Of the cases where mortgages have been given the advantage of purchase-money mortgages, although they do not purport on their face to be such, it is enough to refer to *New Jersey Building Loan and Investment Co.* v. *Bachelor, 54 N. J. Eq. 600,* where Vice-Chancellor Stevens, in a lucid and clarifying opinion, applied the rule to a case of priority between a mortgage and mechanics' liens. In that case, the mortgage was held entitled to priority, to the extent to which money advanced by it went to pay another person, the grantor, for a part of the purchase-money. The mortgage in that case did not, because it

could not truthfully, recite that it was given to secure part of the purchase-money. The priority arose from the facts of the case; there, as here, the purchase price could be traced as coming from the mortgagee.

There is another reason, in the present case, for the priority of the mortgage as to the $995. Prior to October 6th, the estate of Thornton was only an equitable estate. It was at best a mere right in equity to a conveyance, notwithstanding the time fixed by the agreement had passed, upon payment of $995. Until that amount was paid he could not have a deed, and therefore could not have a legal estate. His equitable estate was not subject to lien. *Dalrymple* v. *Ramsey, 45 N. J. Eq. 494.* (While this case has not been subject to review in this court, it has been cited without question—*Davis* v. *Mial, 86 N. J. Law 167, 168*— and the reasoning of Vice-Chancellor Van Fleet is unanswerable.) The present lien claimants were without remedy until Thornton got a legal title, and he got no legal title except as the result of the transaction of October 6th, by which the mortgage was substituted *pro tanto* for the purchase price. Before the lien claimants can have equity, they must do equity, and equity requires that the purchase price, without payment of which Thornton and the complainant never meant that any legal estate should pass, be first paid out of the proceeds of sale.

Whether the balance of the fund after payment of the $995 belongs to the mortgagee or to the lien claimants, depends upon the construction of the Mechanics' Lien act. Prior to 1895, the act provided that the deed made upon a sale by virtue of the special execution should convey to the purchaser the estate which the owner had in the lands at the commencement of the building, or which he subsequently acquired. *Gen. Stat. p. 2068 §
23.* Under that act it was necessarily held that the lien claim had priority over a mortgage given after the building was begun. *Erdman* v. *Moore, 58 N. J. Law 445; New Jersey Building Loan and Investment Co.* v. *Bachelor, supra.* (The mortgages in those cases were given before 1895.) This situation discouraged the loaning of money on new buildings. To cure the evil, the legislature enacted, in 1895 (*P. L. 1895 p. 316 § 6*),

that every mortgage should have priority over lien claims, to the extent of the money actually advanced and paid by the mortgagee and applied to the erection of any new building. *Gen. Stat. p. 2075 pl. 42.* The effect of this was, as the legislature evidently meant, that mortgages recorded *after* the commencement of the building, and therefore liable to be cut out by a sale under the lien claim, were protected to the extent to which the money had actually gone into the building. *Young* v. *Haight, 69 N. J. Law 453.* Section 6 of the act of 1895 now appears as section 15 in the Revised Mechanics' Lien act of 1898 (*P. L. 1898 p. 543; Comp. Stat. p. 3303*), and applies to any mortgage registered or recorded prior to *the filing of lien claim.* The italicized words are important because they distinguish mortgages given after the commencement of the building and recorded before the filing of the lien claim from mortgages recorded before the commencement of the building, as to which the legislation has been different. To this legislation we now pass. The twenty-third section of the Mechanics' Lien act, as revised in 1874 (*Rev. p. 673*), expressly enacted that the conveyance under the special execution should convey subject to all mortgages and other encumbrances created and recorded, or registered prior to the commencement of the building. This made it possible to assure a mortgagee of a first lien for advances made after the commencement of the building, provided only the mortgage was placed on record before the commencement of the building. The priority of such mortgages was sustained by the court of chancery. *Taylor* v. *La Bar, 25 N. J. Eq. 222; Platt* v. *Griffith, 27 N. J. Eq. 207.* This state of the law enabled speculative builders to postpone mechanics' lien claims to mortgages on which nothing had been advanced. The legislature thought this an abuse and corrected it by the act of 1879. *Gen. Stat. p. 2071.* This act made the lien claims prior to "advance money mortgages," although the latter might have been recorded before the commencement of the building. The legislation in that shape proved unsatisfactory, and when the act was revised, in 1898, the act of 1879 was modified. It now appears as section 14. *Comp. Stat. p. 3302.* By its provisions mechanics'

34

lien claims are made prior to "advance money mortgages"—"to the extent only of the moneys remaining to be advanced by the mortgagee under such agreement." The effect of this is to protect the mortgagee for his actual advances but to prevent the lien claimant from being postponed to an amount larger than that actually advanced.

Both section 14 and section 15 appear in the revised act of 1898, and section 28 of that act, which takes the place of section 23 of the act of 1874, enacts that the conveyance under the special execution shall be subject to the lien of any mortgage recorded or registered under the circumstances contemplated by and in conformity with the provisions of section 14 or 15. Both sections are necessary to the complete scheme of the act. The difference between them is marked. Section 14 deprives the mortgagee of a legal right he would otherwise have by recording his mortgage before the commencement of the building, and protects him only to the extent of actual advances, but it does not require that those advances should have been applied to the erection of the new building. Section 15, on the other hand, gives the mortgagee a right he would not otherwise have since his mortgage is not recorded before the commencement of the building, but, in order that he may have that right, he must show that his advances have been applied to the erection of the new building. By section 14, the legislature cuts down a pre-existing right; by section 15 it gives a new statutory right, evidently upon the theory that one whose money goes into the building ought to stand as well as one whose labor or material goes in, even though by the date of record of his mortgage he would not be entitled to it.

The question remains whether the present case is within section 14 or section 15. The facts bring it exactly within section 14. The owner of the lot (the present complainant) disposed of it to Thornton, a builder, and took a mortgage in excess of the purchase-money price and agreed to pay the excess to the builder from time to time as the building progressed. The mortgage was simultaneous with the deed; as soon as Thornton had an estate, to which the mechanics' lien could attach, it

was subject to the complainant's mortgage; he never had in fact more than an equity of redemption. The right of the complainant at law was prior to the subsequent mechanics' lien claim, and could only be cut down under section 14, and thereby only to the amount actually advanced. The fact that the buildings had already been begun could not enlarge the rights of the lien claimant. They could not sell the equitable estate, which was all Thornton had when the building was begun. They could only sell the subsequently acquired estate, and that was subject to the mortgage the instant it was acquired. The complainant does not need to rely on the aid of section 15; it stands on its legal rights under section 14. The amount actually advanced, including the balance of purchase price, was more than the fund in court, and the complainant is entitled to take the whole.

The decree is affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, TERHUNE, HEPPENHEIMER, WILLIAMS, TAYLOR—14.

*For reversal*—None.